## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **KAREEM JACKSON,** | : | **Case No. 2:20-cv-3934** |
| | : | |
| **Petitioner,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | **Magistrate Judge Jolson** |
| | : | |
| **TIM SHOOP, Warden,** | : | |
| | : | |
| **Respondent.** | : | *Death Penalty Case* |

## WARDEN'S POST-EVIDENTIARY HEARING MERIT BRIEF

As more fully explained below, Jackson cannot prevail on the *Brady* claim because Jackson waived an opportunity to have an evidentiary hearing. The gatekeeping rules in Section 2244(b)(2)(B)(ii) require that Jackson "proves" his allegations by "clear and convincing evidence." By waiving an evidentiary hearing, Jackson has "proven" nothing and hence cannot prevail on the *Brady* claim.

Jackson cannot prevail on the *Napue* claim for the primary reason that there is no evidence at all of any conduct, or misconduct, by the prosecution. In other words, there is no evidence at all that the prosecution had any role in King's supposed perjured testimony. Absent evidence of knowledge by the prosecution of supposed perjured testimony, a *Napue* violation cannot be shown.

Although Jackson's failure to show any involvement by the prosecution in respect to King's supposed perjured testimony is independently fatal to relief, Jackson has also failed to prove that he could not have discovered the "factual predicate" of the

*Napue* claim until 2016 when the mother of his child gave his attorneys a declaration, which was almost two decades after Jackson was put on death row.

The supposed "factual predicate" of the *Napue* claim occurred on March 28, 1997, when King was interrogated by detectives. This supposed "factual predicate" was not suppressed by the government, but rather was suppressed by King herself in supposedly failing to tell Jackson that she gave perjured testimony during his trial. Jackson's failure to prove that he could not have obtained this information from King at any time from March 29, 1997, and each day thereafter, shows a failure to meet the diligence prong of an application for a second petition.

## A. Waiver of Evidentiary Hearing on the *Brady* Claim Precludes Relief.

Since this case is before this Court on an application for a second petition, the question before this Court is not whether Jackson's *Brady* claim has any merit. Instead, the question before this Court is whether Jackson has produced new evidence that proves to a clear and convincing standard that Jackson has exercised diligence and that no reasonable factfinder would find him guilty of the crimes. See Section 2244(b)(2)(B)(ii). The answer to this question is a ready and obvious "no," since Jackson waived an opportunity to prove his allegations in an evidentiary hearing. The terms of Section 2244(b)(2)(B)(ii) requires that Jackson "prove" that he meets the successive petition gatekeeping standards. By waiving an evidentiary hearing, Jackson "proves" nothing, and therefore has not demonstrated entitlement to have this Court adjudicate the merits of the *Brady* claim. Since by waiver of an evidentiary hearing Jackson has waived an opportunity to prove his allegations, the

Section 2244(b)(2)(B)(ii) gates remain closed such that this Court lacks jurisdiction to consider the merits of Jackson's *Brady* claim.

1. ***Brady* claim procedural background – Jackson's waiver of evidentiary hearing on the *Brady* claim means that this Court has no jurisdiction to adjudicate the merits of Jackson's *Brady* claim.**

By virtue of the contentions in the Warden's Doc. 27 Answer and in the Warden's Doc. 32 Sur-Reply, Jackson was aware that all of his factual allegation regarding the *Brady* claim were contested. By waiving an evidentiary hearing on his *Brady* claim, Jackson forfeited his chance to prove his version of the factual scenario. Because of his waiver an evidentiary hearing on his *Brady* claim, relief on the *Brady* claim is precluded due to forfeiture of evidence presentation by Jackson. In other words, because of Jackson's waiver of an opportunity to prove his factual allegations in an evidentiary hearing, in this context of an application for a second petition, Jackson has no new evidence at all with which to support the *Brady* claim. See Doc. 37, Warden Opposition to Evidentiary Hearing, Page ID 3933-3934.

In respect to Jackson's *Brady* claim that eyewitness Becky Lewis described the shooter in the exact same manner as eyewitness Nikki Long; *i.e.* that the shooter was 5-4, 5-5 tall, the Warden's Doc. 27 Answer and the Warden's Doc. 32 Sur-reply explained that detective Scott simply made a scrivener's error in reporting that Becky Lewis offered a height estimate of the shooter. Becky Lewis never gave a height description of the shooter, which is confirmable simply by reading the transcript of her interview with the FCSO. See Doc. 32, Warden's Sur-Reply, Page ID 3789-3883. To the contrary, the FCSO record shows that the height estimate was given by

eyewitness Nikki Long. See Doc. 27, Warden's Answer, Page ID 3718-3719 (summary of position); Doc. 32, Warden's Sur-Reply, Page ID 3878-3789 (summary of position).

In the Doc. 27 Answer, the Warden explained that the interviews of Becky Lewis and Nikki Long were tape-recorded and transcribed, and that the trial defense team admitted they had been provided this evidence by the prosecution. The Warden also explained that the state court record showed that trial defense investigator Bob Tarpley met with Becky Lewis and Nikki Long months before the trial such that the witness observations of the facts of the crime would have been known to the defense team long before commencement of the trial. See Doc. 27, Warden's Answer, Page ID 3720-3721 (defense investigator interviews); Page ID 3721-3722 (possession by the defense of the tapes and transcripts of the FCSO interviews with Long and Lewis); Page ID 3727-3728 (the supposed "factual predicate" of the *Brady* claim was known to Jackson at the time of trial because Jackson had the tapes and transcripts of both interviews, and the trial defense investigator Tarpley had interviewed both Becky Lewis and Nikki Long). See also Doc. 32, Warden's Sur-Reply, Page ID 3883-3887 (providing citations to the record regarding the interviews of eyewitnesses Becky Lewis and Nikki Long.

In the Doc. 27 Answer, the Warden also contended that Jackson would have been aware that height description of the shooter by Nikki Long was inconsequential to the state's case. This is so for two reasons.

First, FCSO investigators surmised that the suspected shooter was a few inches taller than the height estimate from Nikki Long. In the suspect sketch published in

the newspaper before Jackson was identified as the shooter by his co-defendants, detective Scott reported that the suspected shooter was about 5-8 tall. See Doc. 27, Warden's Answer, Page ID 3729-3730. Since the FCSO investigators, in reliance on all evidence available at this early stage of the investigation, reported in the press that the suspected shooter was 5-8, the shorter height estimate supplied by eyewitness Nikki Long was not a predominate piece of evidence. See Doc. 24-1, Dispatch News Story, Page ID 3240, showing the suspect, later identified as Jackson, as being 5-8, 200 pounds.

Second, the identity of the shooter that supplied probable case to arrest Jackson rested on admissions by co-defendant Derrick Boone, and later by co-defendant Malaika Williamson. Before eyewitness Becky Lewis identified Jackson in a head-and-shoulders photo lineup, Jackson had already been arrested for the crimes. See Doc. 27, Warden's Answer, Page ID  3730-3732. See also *State v. Jackson*, 92 Ohio St. 3d 436, 437 (2001) ("Boone cooperated with the police and gave them a statement implicating appellant and the others involved in the shootings. As a result, the police presented Lewis with a photo array lineup, which included a photo of appellant. Lewis positively identified appellant from the photo array lineup as the 'guy with the little gun,' the person who hit her over the head with the gun during the robbery and threatened to kill her.")

By the time of trial, direct evidence of the identity of Jackson as the planner and the shooter was provided by co-defendant Boone and co-defendant Williamson.   In other words, nothing said or done by eyewitness Becky Lewis or eyewitness Nikki

Long contributed to the subsequent identification by the FCSO of Jackson. Although eyewitness Becky Lewis did identify Jackson in court as the "guy with the little gun," that identification merely supported and corroborated Jackson's criminal conduct that co-defendant Boone and co-defendant Williamson established by their testimony in open court.

Moreover, in the Doc. 27 Answer, the Warden noted that Jackson never offered any evidence of the height of the never-apprehended "Little Bee," whom Jackson alleged was the "real killer." Also, in respect to height, the Warden noted that in the FCSO records Jackson's own height was listed as 5-7, not 5-9. See Doc 27, Warden's Answer, Page ID 3732-3733.

These arguments and contentions raised by the Warden in the Doc. 27 Answer and the Doc. 32 Sur-Reply show that Jackson was aware that every aspect of the factual allegations of the application for a second petition on the *Brady* claim were contested by the Warden, even including the actual height of Jackson and the actual height of "Little Bee." In other words, the Warden's opposition to all of Jackson's factual allegations put Jackson on notice that if his version of the facts was to prevail, he must prove his version of the facts in an evidentiary hearing.

Furthermore, Jackson was aware that the Warden contended that detective Scott's report was privileged work product and consequently not "suppressed." In the Doc. 32 Sur-Reply the Warden explained that detective Scott's report was "work-product" under the case of *Palermo v. United States*, 360 U.S. 343 (1959), as applied by the Ohio Supreme Court in *State v. Jenkins*, 15 Ohio St. 3d 164 (1984) and *State v.*

*Cunningham*, 105 Ohio St. 3d 197 (2004). Because detective Scott's report was a mere "summar[y] of an oral statement which evidence substantial selection of material, or which [was] prepared after the interview and without complete notes, and hence rests on the memory of the agent," the trial prosecution team had no duty to produce detective Scott's report. Under the *Palermo* rule, there could be no *Brady* violation since mere investigator summaries of witness interviews like detective Scott's report "are not to be produced." See Doc. 32, Warden's Sur-Reply, Page ID 3887-3888.

The upshot of all of this is to show that Jackson was well aware that the factual allegations in support of his application for a second petition on the *Brady* claim were contested by the Warden. Especially in context of an application for second petition, which requires new and reliable evidence that can surmount a "clear and convincing" level of proof, Jackson's waiver of an evidentiary hearing as to the *Brady* claim precludes relief.

The "clear and convincing evidence" to support a grant of relief on an application for a second petition is not what Jackson can allege; it is what Jackson can prove. The terms of Section 2244(b)(2)(B)(ii) requires that "the facts underlying the claim" be "proven." The corollary is that if "the facts underlying the claim" are NOT proven, then the successive habeas applicant cannot prevail. This is especially so where the successive petition applicant in this case, Kareem Jackson, forfeited the opportunity to "prove" "the facts underlying the claim" by waiving an opportunity to seek an evidentiary hearing as to gatekeeping requirements to be met before this Court could adjudicate the merits of the Brady claim.

**2. Jackson's deliberate choice to waive an evidentiary hearing on the *Brady* claim means that Jackson cannot meet two separate and independent gatekeeping requirements under Section 2244(b), such that this Court lacks jurisdiction to adjudicate the merits of the *Brady* claim.**

By waiving an opportunity to have an evidentiary hearing to attempt to prove the alleged facts underlying his *Brady* claim, in two respects this Court lacks jurisdiction to adjudicate the *Brady* claim in this successive 2254 petition. See *Case v. Hatch*, 731 F. 3d 1015 (10th Cir. 2013) ("***Section 2244's gate-keeping requirements are jurisdictional in nature***, and must be considered prior to the merits of a § 2254 petition." (Emphasis added.) ; *accord Goldblum v. Klem*, 510 F. 3d 204 (3rd Cir. 2007) ("We have made it clear that '[u]nless both the procedural and substantive requirements of § 2244 are met, the District Court lacks authority to consider the merits of the petition.' *Benchoff* [*v. Colleran*], 404 F.3d [812] at 816 [(3rd Cir. 2005)]").)

Jackson's waiver of an opportunity to prove the alleged facts underlying his *Brady* claim means that Jackson has failed to establish two separate and independent gatekeeping requirements of Section 2244(b)(2)(B)(ii).

First, by waiving an opportunity to attempt to prove the alleged facts underlying his *Brady* claim, Jackson has no new "clear and convincing" evidence to be used in an attempt to prove that no reasonable factfinder would have found him guilty of the underlying offense - the actual innocence gatekeeping requirement in Section 2244(b)(2)(B)(ii). In context of an intentional forfeiture of the opportunity to prove his allegations in an evidentiary hearing, Jackson cannot satisfy the actual

innocence gatekeeping requirement by offering only more argument as he does in his Doc. 48 Merit Brief, Page ID 4119-4161. See *Turner v. United States*, 183 F. 3d 474 (6th Cir. 1999) ("***Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.***") (Emphasis added.)

Second, by waiving an opportunity to attempt to prove the alleged facts underlying his *Brady* claim, Jackson has no new evidence to establish constitutional error, thus failing to meet a jurisdictional gatekeeping requirement in Section 2244(b)(2)(B)(ii). See *Peyatt v. Gray*, 2023 U.S. App. LEXIS 15600 at *4 (6th Cir. 2023) ("***A credible showing of actual innocence requires new reliable evidence that was not presented at trial***. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Schlup v. Delo*, 513 U.S. 298, 324 (1995).") (emphasis added); *Cf. Anderson v. Burt*, 2018 U.S. Dist. LEXIS 166582, at *32-*33 (DC Mich., Kent, Magistrate Judge) ("In *Schlup v. Delo*, 513 U.S. 298 (1995), the Court set forth the standard by which such claims must be judged: ***To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eye witness accounts, or key physical evidence — that was not presented at trial.*** Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful. *Schlup*, 513 U.S. at 324.") (Emphasis added.)

The gatekeeping requirement to use new evidence to prove constitutional error is separate and independent from the gatekeeping requirement to use new evidence

to prove actual innocence. See *In re Davis*, 565 F. 3d 810, 824 (11th Cir. 2009) ("The statute [section 2244(b)(2)(B)(ii)] undeniably requires a petitioner seeking leave to file a second or successive petition to establish actual innocence by clear and convincing evidence ***and another constitutional violation***.") (Emphasis added.); *accord Gimenez v. Ochoa*, 821 F. 3d 1136, 1143 (9th Cir. 2016) ("Gimenez argues that if his new evidence is credited, 'no reasonable factfinder' could have found him guilty. 28 U.S.C. § 2244(b)(2)(B)(ii). ***But section 2244(b)(2)(B)(ii) also requires petitioners to state a predicate 'constitutional error.'*** See *Case v. Hatch*, 731 F.3d 1015, 1032 (10th Cir. 2013); *In re Davis*, 565 F.3d 810, 823 (11th Cir. 2009).") (Emphasis added.)

Regarding the absence of any new evidence to prove actual innocence due to his purposeful forfeiture of an evidentiary hearing, Jackson cannot substitute mere conjecture and speculation about the meaning and import of what the Warden has characterized as an "ordinary mistake" in Detective Scott's two-page progress of investigation report. In the context of an application for a second petition under Section 2244, Jackson's purposeful waiver of an opportunity to prove his version of events is a forfeiture of relief on his *Brady* claim. See *Clark v. Nagy*, 934 F. 3d 483, 493 (6th Cir. 2019). ("Habeas relief may sometimes be granted without an evidentiary hearing. See Rule 8(a), Rules Governing § 2254 Cases, Advisory Committee Notes (1976 Adoption). We have approved that approach if the violation is 'clearly established by the record' such that 'an evidentiary hearing would only confirm' the allegations. *Sawyer* [*v. Hofbauer*,], 299 F.3d at 612. Skipping

a hearing might also be appropriate in other unusual circumstances, such as when a key affiant is deceased, see *Young v. Gipson*, 163 F. Supp. 3d 647, 749-50 (N.D. Cal. 2015), an attorney's ineffectiveness is patent in the record, see *Bemore v. Chappell*, 788 F.3d 1151, 1176 (9th Cir. 2015), or the Government concedes error, see *United States v. Vaughn*, No. 04-80983, 2018 U.S. Dist. LEXIS 4328, 2018 WL 352893, at *1 (E.D. Mich. Jan. 10, 2018).")

Because Jackson has forfeited his ability to present any evidence on the gatekeeping requirements – diligence, innocence, and a constitutional violation – due to his intentional waiver of an evidentiary hearing on the *Brady* claim, Jackson cannot meet any evidentiary burden such that this Court lacks jurisdiction to adjudicate the merits of the *Brady* claim. See *In re Davis*, 565 F. 3d 810, 823 (11th Cir. 2009) ("Section 2244(b)(2)(B)(ii) provides that new evidence submitted with an application to file a second or successive petition must "be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). ***Under the plain language of the statute, § 2244(b)(2)(B)(ii) requires both clear and convincing evidence of actual innocence – 'clear and convincing evidence that . . . no reasonable factfinder would have found the applicant guilty of the underlying offense' – as well as another constitutional violation – 'but for constitutional error.'*** It is, in effect, an 'actual innocence plus standard.'") (Emphasis added.)

What that means here is that although Section 2244(b)(2)(B)(ii) requires the presentation of new "clear and convincing evidence," Jackson has none at all due to his purposeful waiver of an evidentiary hearing. Because Jackson has only unproven factual allegations, Jackson cannot meet the gatekeeping requirements that would entitle this Court to adjudicate the merits of his *Brady* claim. Since Jackson cannot meet the gatekeeping requirements of Section 2244(b)(2)(B)(ii) due to his forfeiture of an evidentiary hearing, this Court has no jurisdiction to adjudicate the merits of his *Brady* claim.

3. **Even under a lax analysis that would give Jackson's *Brady* claim the benefit of the doubt, a few-inch height discrepancy between a witness's estimate and the actual verifiable height of the defendant is of no import.**

Regarding the difference in the estimation of height by eyewitnesses, the law has always acknowledged that variations are expected. For example, in *Darden v. Wainwright*, 477 U.S. 168, 174 footnote 1, (1986) the defendant was in fact 5-10 and 175 pounds. As to the estimation of his height, one eyewitness said the defendant was about 5-6. Another eyewitness described the defendant as about 6-2 tall.

Although the actual discrepancy between the height estimate by one witness was two inches, and by another witness was six inches, the *Darden* Court termed these as "***minor discrepancies in the eyewitness identification.***" *Id.*, at footnote 1. (Emphasis added.)

What that means here is that the supposed suppression of a minor discrepancy in eyewitness identification could not be the foundation of a viable *Brady* claim, since by definition the "discrepancy" is "minor." Where the "discrepancy" is "minor," the

materiality standard in the Brady rule cannot be met. *Cf. Hill v. Mitchell*, 842 F. 3d 910, 931-932 (6th Cir. 2016) ("After we again eliminate the unsupported assumptions in the district court's analysis, the only "inconsistency" in the grand jury testimony is the mix-up with Ronessa's name. ***This is a minor discrepancy.*** If it had been disclosed to Hill prior to trial, it would almost certainly have been easily explained away. There is no reason to believe that Hill would have been able to use it to so effectively impeach Dudley's credibility as to undermine confidence in the outcome of the trial.") (Emphasis added)

In a 1983 action, Judge Rose of this Court gave no import to "a few-inch height discrepancy between the estimated height in the police report of the robbery and [the defendant's] actual height...." See *Bach v. Drerup*, 2013 U.S. Dist. LEXIS at *28-*29 (SDO, Rose, J. 2013). On appeal, the Sixth Circuit affirmed on this point, saying that "[P]robable cause was not undermined by the conflicting descriptions of the Walgreens robber; the height difference was not so extreme as to make Walls's statement unworthy of belief.") See *Bach v. Drerup*, 545 Fed. Appx. 474, 477 (6th Cir. 2013)

A similar outcome was reached in *Jones v. City of Oak Park*, 2017 U.S. Dist. LEXIS 139245, at *20-*22 (USDC Mich., Drain, J. 2017). First, the *Jones* Court noted that under Sixth Circuit precedent, even a five-inch difference between the described versus actual height of the defendant "was not so extreme to make [the witness's] statement unworthy of belief," quoting from *Bach v. Drerup*, 545 Fed. Appx, 474, 477 (6th Cir. 2013)

Second, the *Jones* Court noted that the identification by "photo lineup did not include heights." Under these circumstances, "height discrepancies were irrelevant to establishing probable cause to seize the [defendant.]" *Id.,* at *22.

The Court in *Charles v. Artus*, 2018 U.S. Dist. LEXIS 179347, at *8-*9 (USDC NY, Block, J. 2018) reached the same conclusion, saying that the "witness's only other inaccuracy was a misjudgment of Charles's height by six inches, which on its own is insufficient to overcome the otherwise accurate identification."

What these cases mean here is that even casting Jackson's the merits of the *Brady* claim in the most favorable light, the best Jackson can allege is a height discrepancy that could be as much as six inches, and could be as little as two inches, depending on whether Jackson is 5-9 as he claims, or is 5-7 as shown in the arrest photo. Either way the height discrepancy carries no legal weight, especially where the identification of him by co-defendant Boone is what provided probable cause to arrest him.

Accordingly, even if Jackson did not forfeit his presentation of evidence by waiver of the evidentiary hearing, the height discrepancy he presents is of no import. In other words, even if Jackson proved by clear and convincing evidence that Becky Lewis estimated Jackson's height at 5-4, 5-5, the same estimate as actually provided by eyewitness Nikki Long, the "discrepancy" could be as little as two inches, if Jackson is in fact 5-7 as reported in the Jackson's CPD identification photo. See Doc. 24-1, Supplemental APXX, Page ID 3319. If Jackson if in fact 5-9 as he alleges, the "discrepancy" could be as much as four inches. Either way, the "discrepancy" is well

within the range of what is expected in eyewitness descriptions of the height of the assailant such that constitutional error could not be shown. See *Darden v. Wainwright*, 477 U.S. 168, 174 footnote 1, (1986); Cf. Moore v. Horel, 2010 U.S. Dist. LEXIS 63020, at *29 (USDC CA 2010) ("Barksdale's statement that the robbery suspect was 'as tall or taller' than her boyfriend does not prove petitioner's innocence. Any minor discrepancy between Barksdale's estimation of the suspect's height, based on her brief viewing, and that of O'Sullivan, as part of his positive identification of petitioner as the robber, certainly does not support petitioner's claim of actual innocence.")

**B. Jackson fails to meet the successive petition gatekeeping rules as to the *Napue* claim for the primary reason of the absence of any evidence about the prosecutor's knowledge of alleged perjured testimony by Ivanna King.**

**1. *Napue* claim procedural background – the operative allegation fraudulent conduct of the detectives was first presented when King testified at the evidentiary hearing, and King never alleged or testified to prosecution knowledge.**

In the application for second petition as to the *Napue* claim, there were three allegations of government misconduct. First, Jackson alleged that the SWAT arrest team caused his girlfriend Ivanna King to be frightened and also that SWAT acted aggressively in the handling of the infant child at the arrest scene. Second, Jackson implied that the two detectives who appeared at Ivanna's mother's house were attempting to intimidate Ivanna by asking her if she had someone to watch her children while Ivanna would have been at the FCSO for a witness statement. Because all of her children were already at her mother's house, King had such child-care

assistance and so informed the detectives. See Doc. 37, Warden Opposition to Evidentiary Hearing, Page ID 3950-3953.

The third allegation of government misconduct was that the detectives threatened to charge King with possession of the guns recovered during the SWAT arrest "unless [King] said what the police wanted to hear." In the application for second petition, Jackson did not present the 2016 King declaration but instead wrote out excerpts of the declaration that had been filed in state court. See Doc. 1, Jackson application for a second petition, Page ID 73-75.

Notably, in her 2016 declaration King did admit that she told detectives that Jackson told her that "he done two people." ***King did not, however, allege in her 2016 declaration that the detectives forced her to say that Jackson told her that "he done two people."*** Instead, in her 2016 declaration King's sole allegation of misconduct by the detectives was that the detectives threatened to charge King with possession of the guns recovered during the SWAT arrest "unless [King] said what the police wanted to hear." See Doc. 1, Jackson application for a second petition, Page ID 73-75.

During her testimony in the evidentiary hearing, King for the first time ever alleged that the detectives forced her to say the very words that Jackson "done two people." See Doc. 47, Transcript of Evidentiary Hearing, Page ID 4055. ***This allegation – that the detectives forced her to say the very words that Jackson done two people – was not in King's declaration that was filed with the state***

***court, nor was that allegation stated in Jackson's Doc. 1 application for a second petition.***

### A. Omission from Jackson's pleadings of the key allegation against the detectives precludes relief.

Because of the heightened habeas pleading requirements that all facts in support of the habeas claim be alleged, and in view of the pleading requirements under FRCP 9(b) that fraud be pled with particularity, relief should be denied for Jackson's failure to plead the *Napue* claim with specificity. See *Marcella v. United States*, 344 F. 2d 876, 880 (9th Cir. 1965) ("Before a sentence may be vacated on the ground of perjured testimony, the movant must show that the testimony was perjured and that the prosecuting officials knew at the time such testimony was used that it was perjured. *Black v. United States*, 269 F.2d 38 (9th Cir. 1959). ***In addition, the perjured testimony said to have been knowingly used must be particularized definitely.*** *Holt v. United States*, 303 F.2d 791 (8th Cir. 1962); Accord, *United States v. Jenkins*, 281 F.2d 193 (3rd Cir. 1960);" see also *Holt v. United States*, 303 F. 2d 791 (8th Cir. 1962) ("***Since neither the § 2255 motion nor appellant's briefs particularize definitely the perjured testimony said to have been knowingly used, we would be justified in refusing to consider this contention.");*** see also *Taylor v. United States*, 229 F. 2d 826 (8th Cir. 1956) ("Appellant argues that to compel him to plead with more particularity than he has done would require him to plead evidence. ***Rule 9(b) of the Rules of Civil Procedure, 28 U.S.C.A., requires 'particularity' in averments as to 'fraud'.*** To procure a judgment by the known use of perjury is a fraud against the opposing party. Hence, the rule would require

this appellant to set forth facts sufficient to inform the Government as to what he relies upon to establish this 'fraud' against him."); see also *Braden v. United States*, 2019 U.S. Dist. LEXIS 137448, at *42-*43 (USDC TN, Campbell, J.) ("Finally, the Court notes that, adjacent to some of his argument regarding supposedly perjured testimony, Mr. Braden provides legal citations that may be an attempt to invoke ***a claim that the Government committed prosecutorial misconduct by knowingly presenting false testimony***. Any such claim will be denied for three reasons. First, it is not among the categories of claims identified by the Sixth Circuit on appeal, and it is not clearly identified on the initial pro se motion itself. ***Second, it is insufficiently pled under Rule 2(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts ("Section 2255 Rules") because Mr. Braden does not clearly state the facts supporting this ground.***")

Included under Jackson's failure to adequately plead the *Napue* claim is his failure to produce adequate evidence of diligence regarding the presentation of King's 2016 declaration. Because King has a child with Jackson, King has been a part of Jackson's life since the murders took place. Moreover, because of King's ongoing relationship with Jackson it would be expected that if King had been forced by the detectives to lie at Jackson's trial, she would not have been afraid to speak up. To the contrary, if what King testified to in the federal evidentiary hearing was true, the expectation would be that King would have revealed the shocking allegations years before the 2016 time frame.

In her federal evidentiary hearing testimony, King did not offer a compelling explanation why she remained silent until more than a decade after Jackson's conviction to say that she supposedly perjured herself at Jackson's trial. Presumably, Jackson's legal team, which had been in place continuously, had no idea that part of King's trial testimony was supposedly perjured. For her part, King arguably would have been reluctant to tell Jackson and his legal team of her supposed perjury if her motive to do so was mere anger at Jackson himself. That reluctance to speak up should not be present if what King now alleges was true: that detectives forced her to lie because of threats to charge her with bogus crimes. To the contrary, a reasonable fact-finder should be skeptical of the truth of these shocking allegations where King supposedly kept them to herself for almost twenty years after Jackson got put on death row.

A proper showing of "diligence" in this context would at least include evidence from King why she did not, if her allegations were true, reveal them as soon as she left the FCSO interrogation that took place on March 28, 1997. At all times, King herself has been innocent of any criminal wrongdoing. Safe with this knowledge of absolute factual innocence of any wrongdoing, if King's allegations were true she could have, and should have, revealed them as soon as she got back to her mother's house after the interrogation on March 28, 1997.

The "factual predicate" of Jackson's *Napue* claim is not the 2016 King declaration. Instead, the 2016 King declaration may be *evidence* to support the "factual predicate" of the *Napue* claim. In contrast, the "factual predicate" of the

*Napue* claim occurred on March 28, 1997, when the detectives supposedly force King to give a fraudulent statement in order to escape bogus criminal charges.

Jackson has not offered any cogent explanation why the supposed "factual predicate" of the *Napue* claim, if true, was not uncovered until the 2016 King declaration. This evidence from King, if true, would have been at all times available to the defense since King has had an ongoing personal relationship with Jackson since about four years before the murders.

The "factual predicate" of the *Napue* claim, if true, was not "suppressed" by the prosecution. Instead, the "factual predicate" of the *Napue* claim, if true, was "suppressed" by Ivanna King herself. Under these circumstances, a proper evaluation of whether Jackson has proven diligence by clear and convincing evidence should include a justifiable explanation why King herself "suppressed" the supposed misconduct by the detectives in the days, months, and years after the evening on March 28, 1997, when King got back home from the FCSO interrogation.

Under these circumstances, Jackson could have found the supposed "factual predicate" of the *Napue* claim at any time after March 28, 1997, by simply asking King if she had any information that might help the defense. In order to show "diligence" Jackson is supposed to show that King's allegations could not have been discovered sooner. Jackson's failure to present any evidence to justify the more than a decade of delay in obtaining King's 2016 declaration means that diligence under Section 2244(b)(2)(B)(ii) has not been shown. See *Moreland v. Robinson*, 813 F. 3d 315, 326 (6th Cir. 2016) ("Evidence that supported Moreland's new claims was

therefore available when he filed his original habeas petition in 2005. These newclaims do not meet the gatekeeping requirements for presenting claims in a second or successive habeas petition.")

### B. Omission from the King 2016 declaration of the key allegation against the detectives shows recent fabrication.

The omission from the 2016 King declaration of the key allegation that detectives actively and directly forced King to say that Jackson told her that he "done two people" also raises a credibility issue. That detectives allegedly forced her to provide false evidence is an allegation of such import that its omission from the 2016 King declaration shows recent fabrication.

The omission from the 2016 King declaration of the key allegation that detectives actively and directly forced King to say that Jackson told her that he "done two people" is not a fact that King would have forgotten about or would have thought was not important. Instead, the key allegation that detectives actively and directly forced King to say that Jackson told her that he "done two people" is of such significance and import that, *if true*, that key allegation would have appeared in the 2016 King declaration. Because the key allegation did not appear in King's 2016 declaration, and was first disclosed by King on the witness stand in the federal evidentiary hearing, this Court should consider this key allegation to be a recent fabrication.

## C. King's evidentiary hearing testimony about anger over not receiving robbery proceeds undermines her credibility.

During her testimony at the federal evidentiary hearing, King explained that four years before the murders, King had loaned Jackson the sum of 150 dollars. King had wanted to be repaid for the loan, but Jackson did not repay. Later, King found out that Jackson "had robbed banks" but was still on the loose. King testified that she was "mad" over this, because when Jackson "had all of this money" from robbing banks, he did not repay the loan from King. King testified that she told Jackson that she was turning him into the crime stopper tip-line, and that was how "I was going to get my 150." King explained that she was responsible for Jackson's arrest on bank robber charges. See Doc. 47, Evidentiary Hearing Transcript, Page ID 4033-4036.

No doubt this scenario was true: King turned Jackson into the crime stopper tip line because Jackson "had robbed banks" and had "all this money" but never repaid the 150 dollar loan from King. While King's anger with Jackson is not irrational, King's expectation that Jackson should have shared some of the bank robbery proceeds with her shows a compromised value system. King's compromised value system was also on display in that she unabashedly testified that she was entitled to proceeds from Jackson's bank robberies. Saying so without shame or chagrin suggests that King believed that everyone else would also think she was cheated by not receiving some of Jackson's robbery proceeds. These factors show King's  compromised value system that undermines her credibility.

Of equal note is that Jackson did not present any evidence of involvement by the prosecution in respect to the newly-revealed allegation where King said the two

detectives forced her to say the very words that Jackson told her that "he done two people." In other words, in her evidentiary hearing testimony, King said nothing at all about the prosecution in connection to the newly-alleged fraudulent conduct by the detectives.

As explained below, Jackson's complete failure to present any evidence linking the prosecution with the newly-alleged fraudulent conduct by the detectives means that Jackson cannot meet the gatekeeping rules in Section 2244(b)(2)(B)(ii).

**2. Even assuming the truth of King's federal evidentiary hearing testimony, there is no violation of the US Constitution such that this Court lacks jurisdiction to adjudicate the merits of the *Napue* claim.**

One reason why Jackson has failed to meet the gatekeeping requirements of Section 2244(b)(2)(B)(ii) is that the newly-alleged fraudulent conduct of police investigators as testified by King in the federal evidentiary hearing does not state a violation of the federal constitution. Jackson's failure to meet the gatekeeping requirements of Section 2244(b)(2)(B)(ii) means that this Court lacks jurisdiction to adjudicate the merits of the *Napue* claim. See *Case v. Hatch*, 731 F. 3d 1015 (10th Cir. 2013) ("***Section 2244's gate-keeping requirements are jurisdictional in nature, and must be considered prior to the merits of a § 2254 petition***.") (Emphasis added.)

**A. Mere forceful words from investigators do not show a constitutional violation.**

For starters, mere forceful words by investigators during an interrogation do not violate the federal constitution. For example, in *United States v. Jacobs*, 63 F. 4th 1055. 1060 (6th Cir. 2023), the Court held that threats by detectives to obtain a search

23

warrant for the house of defendant's father and to "dump everything in that house out" and to "toss the whole place" did not violate the federal constitution. Specifically, the *Jacobs* Court said "As it is, threatening a thorough but lawful search – even inartfully – is not by itself impermissible." *Id.*, at 1060.

What that means here is the allegation from the 2016 King declaration that the detectives threatened to charge King with possession of the guns recovered during the SWAT arrest "unless [King] said what the police wanted to hear" does not state a violation of the federal constitution.

First, since a number of guns were recovered from the home of Ivanna King, possible charges against King herself for some associated impropriety was not out of the question. The guns themselves, however, were not stolen or otherwise illegally possessed such that mere possession was not unlawful or illegal. Given that possession of the guns themselves was not illegal, in context of the fact that King herself had no direct involvement of any aspect of the crimes, any alleged threat to charge King with possession of the guns was empty of coercive force; there is no such crime for the mere possession of the guns. Instead, any charges arising from the guns in her home would rest on King's complicity with the murders, which would not have been taken by her to be a serious threat since she herself knew she had no involvement at all with the murders. In other words, because the guns themselves were not illegal, and King in fact had no involvement with the murders, King was under no risk of any criminal charges. These factors show that the forceful words

ascribed to the detectives in King's 2016 declaration do not state a violation of the federal constitution. *See United States v. Jacobs*, 63 F. 4th 1055. 1060 (6th Cir. 2023).

**B. King's allegation that she told the detectives "what they wanted to hear" does not show a constitutional violation.**

Second, King saying in her 2016 declaration that she felt like she had to tell the detectives "what they wanted to hear" can easily be given a benign interpretation. Using everyday connotations, what police "want to hear" is the truth, since proof in court requires true evidence. Consequently, a threat of charges over some aspect of the guns being recovered from King's home unless she told police what "they wanted to hear" does not state a violation of the federal constitution. *Cf. United States v. Johnson*, 351 F. 3d 254, 263 (6th Cir. 2003) (A threat to charge a mere witness with possession of drugs was not improper where the drugs were recovered in the bed used by the witness.)

What King alleged in her 2016 declaration – that detectives threatened her with gun charges unless she told detectives "what they wanted to hear" does not state a violation of the federal constitution and consequently carries no weight in the assessment of whether Jackson has proven diligence, innocence, and a constitutional violation as required by the gatekeeping rules in Section 2244(b)(2)(B)(ii).

**C. Recantation of prior testimony and admission to perjury does not show a constitutional violation.**

Another reason why Jackson has failed to meet the gatekeeping requirements of Section 2244(b)(2)(B)(ii) is that the mere recantation by a witness of their trial testimony and the consequential admission to perjury is not actionable under the

federal constitution. See *Ellis v. Barnhart*, 2009 U.S. Dist. LEXIS 86738, at \*54, footnote 4 (USDC Mich., Komives, Magistrate Judge). ("***At a minimum, '[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial.'*** *LaMothe v. Cademartori*, No. C 04-3395, 2005 U.S. Dist. LEXIS 30851, 2005 WL 3095884, at \*5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that **the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge**)). Thus, the court of appeals' rejection of petitioner's perjury claim did not violate any clearly established law under § 2254(d)(1). See *Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999).")

These cases show that King's recantation of part of her criminal trial testimony and her insistence that a part of her criminal trial testimony was perjurious does not state a violation of the federal constitution.

Similar reasoning was applied by the United States Supreme Court in the case of *Briscoe v. LaHue*, 460 U.S. 325 (1983). In *Briscoe*, the 1983 petitioner alleged a violation of the federal constitution because a police officer allegedly gave false testimony in the petitioner's criminal trial. From the standpoint of the federal constitution, the *Briscoe* Court noted that "The Court has held that the prosecutor's knowing use of perjured testimony violates due process, **but has not held that the false testimony of a police officer in itself violates constitutional rights**.

See *United States v. Agurs*, 427 U.S. 97, 103, and nn. 8, 9 (1976) (citing cases).")
(Emphasis added.)

The analysis in *Briscoe* is consistent with that of the Court in *Hysler v. Florida*, 315 U.S. 411, 413 (1942). In emphasizing that a conviction was based on perjured testimony is not actionable absent knowledge by the prosecution, the *Hysler* Court said "In this collateral attack upon the judgment of conviction, the petitioner bases his claim on the recantation of one of the witnesses against him. ***He cannot, of course, contend that mere recantation of testimony is in itself ground for invoking the Due Process Clause against a conviction***." (Emphasis added.)

What that means here is that King's "mere recantation of [trial] testimony" made during the federal evidentiary hearing does not prove a due process violation applicable to Jackson's conviction and death sentence. Cf. *United States v. Chambers* 944 F. 2d 1253 (6th Cir. 1991) ***("Recanting affidavits and witnesses are viewed with extreme suspicion.")*** (Emphasis added.); see also *Brooks v. Tennessee*, 626 F. 3d 878, 897 (6th Cir. 2010) ("***[T]his court views with great suspicion the recantation testimony of trial witnesses in postconviction proceedings***."); see also *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984) (Brennan, J., dissenting from denial of certiorari) ("***Recantation testimony is properly viewed with great suspicion***. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction."); see also *Carriger v. Stewart*, 132 F. 3d 463, 483 (9th Cir. 1997)

("***Recanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial.***") (Emphasis added.)

### D. No evidence at all of knowledge by the prosecution means that a *Napue* violation cannot be shown.

There is no due process violation because there is a complete absence of evidence showing knowledge of supposed false testimony by the prosecution. This failure of proof means that Jackson has failed to show a constitutional violation, even assuming for the sake of argument the truth of King's federal evidentiary hearing testimony. ***Failure to show a constitutional violation means that Jackson has failed to meet a gatekeeping requirement in Section 2244(b)(2)(B)(ii).*** See *Hedelsky v. United* States, 2020 U.S. Dist. LEXIS 11331 (USDC TN, McDonough, J.) ("To the extent Petitioner contends that he is entitled to relief solely because [police detectives] Lane and Brewer perjured themselves at trial, that claim fails because perjured testimony without government knowledge does not provide a basis for habeas corpus relief: ***An allegation of perjury, apart from an allegation of knowing use by the Government of that perjury, constitutes no basis for habeas corpus or coram nobis relief as it alleges no error of constitutional dimensions.***") (Emphasis added.); see also *Blalock v. Wilson*, 320 Fed. APPX. 396 (6th Cir. 2009) ("Since [habeas petitioner] Blalock has not shown that the prosecutor played a knowing role in the presentation of the allegedly perjured testimony, this court rejects Blalock's claim that [key government witness] Willis's testimony could, in and of itself, violate the Constitution."); see also *Cross v. White*, 2020 U.S. Dist

LEXIS 265651 at *12-*13 (USDC KY, King, Magistrate Judge) ("Here, there is no allegation or evidence that the prosecutor was involved, or playing a knowing role, in the presentation of the allegedly perjured testimony. ***Without such a showing, Petitioner's actual-innocence claim is without merit.***"); (emphasis added) see also *Johnson v. Parker,* 2011 U.S. Dist. LEXIS 112847 at *92 (USDC TN, Trauger, J.) ("***Sixth Circuit precedent establishes that the government must have 'knowingly' used perjured testimony at trial in order for the presentation of that testimony to constitute a violation of due process.***"); see also *Kimbrough v. Colson*, 2009 U.S. Dist. LEXIS 103830, at *13-*14 (USDC TN, Trauger, J.) ("Finally, even if it could be proved that former detective Carrell perjured himself, and/or that someone planted, manufactured, or altered the evidence used to convict the petitioner, there is not a scrap of proof in the record that the State knowingly used either."); see also *Hogue v. Michigan*, 2009 U.S. Dist. LEXIS 124966 (USDC Mich., Scoville, Magistrate Judge) ("On this record, there is absolutely no evidence that the assistant prosecutor knew or should have known that Little's characterization of the nature of the dismissed drug charges was inaccurate. It is significant that petitioner's appellate counsel presented no evidence to the appellate courts to support a charge of the knowing presentation of perjured testimony."); see also *Foley v. Parker,* 488 F. 3d 377, 392 (6th Cir. 2007) ("In this case, [habeas petitioner] Foley has not shown that the prosecution knew or should have known that [co-defendant] Caldwell was committing perjury when he testified at Foley's trial."); see also *Spirko v. Anderson*, 2000 U.S. Dist. LEXIS 13182 at *69 (USDC NDO, Carr, J.)("***Petitioner has not***

***alleged, much less shown, that the prosecution was aware that Ruffin's and Connor's testimony, as he alleges, was perjured.*** Petitioner is not entitled to relief on this claim."); (Emphasis added) see also *Derring v. McKee*, 2006 U.S. Dist. LEXIS 8667 (USDC Mich., Scoville, Magistrate Judge) ("Petitioner's first claim -- that the prosecutor 'negligently' presented perjured testimony -- fails to state grounds for habeas corpus relief under this rule. ***By definition, the Due Process Clause is only offended when a prosecutor acts knowingly in presenting false testimony.*** Petitioner therefore bears the burden of showing the knowledgeable and deliberate use of perjured evidence by the prosecution.") (emphasis added); see also *Workman v. Bell*, 178 F. 3d 759, 768 (6th Cir. 1998) ("Assuming that Dr. Sperry's observations are credited, Workman has presented no evidence that the prosecution knowingly presented false evidence in this regard. He has simply shown that there may be different interpretations of the physical evidence. As Workman cannot demonstrate falsity, he cannot prevail on this argument. See [*United States v.*] *Hawkins*, 969 F.2d at 175 [6th Cir. 1992]."); see also *Moreno v. Dretke*, 362 F. Supp. 2d 773, 807-808 footnote 65 (USDC TX, Rodriguez, J. 2005) ("Petitioner argues that the Sixth Circuit opinion in *Jones v. Commonwealth of Kentucky*, 97 F.2d 335, 336-38 (6th Cir. 1938), mandates federal habeas relief when a defendant presents evidence showing that a prosecution witness committed perjury during trial. However, the Sixth Circuit itself acknowledged in *Burks v. Egeler*, 512 F.2d 221, 227-29 (6th Cir.), cert. denied, 423 U.S. 937 (1975), that the Supreme Court's holdings in *Giglio* and *Napue*, and not the rule in *Jones*, had governed the evaluation of similar due process claims in that

Circuit for many decades."); see also *Shakir v. United States*, 2021 U.S. App. LEXIS 28562, at *15-*16 (6th Cir. 2021) ("***But perjured testimony, absent government knowledge, does not provide a basis for § 2255 relief.*** See *United States v. Castano*, 906 F.3d 458, 464-65 (6th Cir. 2018) (citing *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975)).") (emphasis added); see also *United States v. Lehman*, 2013 U.S. Dist. LEXIS 61198, at *10, footnote 1 (USDC KY, Tatenhove, J.) ("Alternatively, this analysis fails because, as was determined in this Court's March 23 order, ***Defendants have failed to show that the prosecution elicited testimony that it knew was false***. ***By failing to establish this prong of the analysis, Defendants' argument is doomed.")*** (emphasis added); see also *Anderson v. Burt*, 2018 U.S. Dist. LEXIS 166582, (Kent, Magistrate Judge) at *22-*23 ("There can be no question that Anthony Wright provided false testimony; however, it is not clear whether he did so at the preliminary examination or the trial. ***Importantly, Petitioner has not demonstrated that the prosecutor knew that the preliminary examination testimony—the only testimony that implicated Petitioner—was false***.") (emphasis added); see also *United States v. Santiago*, 798 F. 2d 246, 247 (7th Cir. 1986) ("***Even if Ms. Rosales lied under oath as to the date she joined the charged conspiracy, the prosecution is not 'strictly liable' for her perjury.*** * * * However, the prosecutor does not vouch for the veracity of every statement made by a witness."); see also *Burks v. Egeler*, 512 F. 2d 221, 229 (6th Cir. 1965) ("***False evidence and perjury are matters that may be raised on the trial***

**and on motions for a new trial, but not in habeas corpus, Section 2255, or other post-conviction petitions**. Otherwise every criminal conviction other than a plea of guilty would be subject to repetitious retrial on post -conviction petitions long after the criminal trial had occurred and long after time had erased both memories and witnesses, for few persons convicted of crime do not contend that something untrue was said in their trial.' *Hoffa v. United States*, supra, at 392-393."); see also *Rosenkrantz v. Lafler*, 568 F.3d 577, 585, 587-588 (6th Cir. 2009) At 585 ("Rosencrantz speculates that the prosecutor coaxed this change to weaken his alibi defense. At the habeas evidentiary hearing, however, Rosencrantz failed to question Lasky about the substance of her pretrial discussion with the prosecutor, and the district court correctly declined to make any inferences favoring Rosencrantz on that subject. *** At 587-588 Second, we cannot fill the evidentiary gap here by speculating that the prosecution used the pretrial meetings to coach or coerce [sexual assault victim] Lasky to testify falsely--defense counsel failed to pursue this topic at the evidentiary hearing, and thus no evidence exists on the substance of the meeting.") see also *St. Ann v. Rapelje*, 2014 U.S. Dist. LEXIS 112254 at *40-*42 (USDC Mich., Komives, Magistrate Judge.), excerpted below:

> With respect to the second element, as the Sixth Circuit has explained
> in order for a witness's perjury at trial to constitute a basis for habeas
> relief, ***the petitioner must show 'prosecutorial involvement in the
> perjury.'*** *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). ***The Sixth
> Circuit has repeatedly reaffirmed the requirement that a***

**petitioner show prosecutorial involvement in or knowledge of the perjury.** See, e.g., *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States,* No. 94-3469, 1994 U.S. App. LEXIS 27303, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 U.S. App. LEXIS 31647, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). **And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such**. See, e.g., *Napue v. Illinois*, 360 U.S. 264, 269 (1959) ('[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'); *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976) (due process is violated by the 'knowing use of perjured testimony.'); see *id*. at 103-04 & nn. 8-9 (discussing cases). At a minimum, '[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial.' *LaMothe v. Cademartori*, No. C 04-3395, 2005 U.S. Dist. LEXIS 30851, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 15, 2005) (citing *Jacobs v. Scott*, 513 U.S.

1067, 115 S. Ct. 711, 130 L. Ed. 2d 618 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that **the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge**)); *cf. Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1, (1983) ('***The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer in itself violates constitutional rights.'***). (all emphasis added.)

## CONCLUSION

Because Jackson waived an evidentiary hearing on the *Brady* claim, Jackson has proven nothing and cannot prevail. As to the *Napue* claim, the complete absence of evidence of involvement by the prosecution precludes relief. The Court should accordingly deny relief because Jackson has failed to meet the gatekeeping requirements in Section 2244(b)(2)(B)(ii).

Respectfully submitted,
**DAVE YOST**
**Ohio Attorney General**

*s/ Stephen E. Maher*
STEPHEN E. MAHER (0032279)
Assistant Attorney General
Capital Crimes Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055
(cell) 740-412-0552

Stephen.Maher@ohioAGO.gov
**COUNSEL FOR RESPONDENT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Warden's Post Evidentiary Hearing Merit Brief* has been forwarded via the court's electronic filing to all parties of record this 4th day of August, 2023.

*s/ Stephen E. Maher*
**STEPHEN E. MAHER (0032279)**
Assistant Attorney General